Our next case scheduled for argument today is N. Ray Kostic, appeal number 23-1437. Mr. Gregory, take your time, but when you're ready, we're ready. May it please the Court, Sean Gregory of Taft, Stettinius & Hollister on behalf of appellants Miodrag Kostic and Guy Vandeweld. We have all heard the apparently intractable question, which comes first, the chicken or the egg? While a key question in this case sounds very similar, which comes first, validity or claim construction, this Court has explicitly provided the guidance that the validity cart should not be placed before the claim construction horse. Yet, in the PTAB below, the PTAB did explicitly the opposite. They explicitly said, we can't construe this claim appropriately because of statutory constraints. In Pfizer, Inc. and Renbaxy Laboratories, Ltd., this Court very clearly analyzed a very similar situation. There was a dependent claim, yes, Your Honor. Do you intend that the relevant comparison for broadening the issue is what the patentee intended the original scope to be? Claim construction is all about what the patentee's intention is, yes, Your Honor. The proper scope of dependent claim 3 is what the patentee intended, and if we look at the specification, the only scenario, the only written description support provided, or the clear written description support provided, is an alternative sale, an alternative direct exchange between parties that avoided or did not involve a trial. So how is the public supposed to understand what the intended original scope of the patentee was here? So the public is able to understand it the same way that the courts do, that the practitioners do, reading the specification, understanding the clear language in the specification, and the clear language in the claims. The patented claim 3 is very clear, a method according to claim 1, wherein the intermediary website enables interested exchange partners to conduct a direct exchange of click-through traffic without a trial process. And that plain language says we have parties that are not, there's no antecedent basis, there's no reference back to claim 1 other than the preamble, so we have interested parties that want to perform a direct transaction without a trial. And in light of the specification, that direct transaction is an alternative to the trial-based transaction that is recited in claim 1. Why wouldn't a claim that allows methods A or B fundamentally be broader than a claim that allows only method A? So according to the MPEP, according to the Patent Office, there are two distinct methods that according to the MPEP, that is not a broader claim, it's simply a claim that recites additional steps. If the claim, if we were to interpret the original claim to require just one of the two options, not be A or B, but to just be B, drawing to B alone, if we were to agree with that interpretation, you would have a problem, right? I mean, the claim, because I'm having a hard time understanding, as Judge Cunningham said, why a claim directed to A or B isn't broader than a claim just directed to B. So part of the issue is, the analysis isn't a comparison of claim 3, of proposed claim 3 to original claim 1. The question is whether claim 3 as proposed, the new claim, is the same as claim 3 as patented. Okay, but my question stands. What if I interpret original claim 3 to be directed to no testing period? So then claim 3 and the reissue is directed to a system that offers either a testing period or no testing period. Why isn't reissue claim 3 broader than original claim 3? During the prosecution history, during re-exam, appellants actually proposed what you're asking. The original claim amendments proposed was just that, let's only do alternative B, and the examiner didn't like it. And so in order to please the examiner, the appellants then incorporated original claim 1 in the alternative, which also is further supported by the written description. So what I would say is... Do you want to point us to a place where that happened or show us in the plain claim language what you're talking about to make it so that original claim 3 can be interpreted as being a claiming either A or B? I mean, it seems to me that that seems to be your main argument, is that original claim 3 is directed to alternative options. Yes, Your Honor, yes, Your Honor. And the best way to show that is if we look at the proposed claim 3 under amendment during re-exam and look at how it's amended... Is this re-issue claim 3? Yes, if we look at re-issue claim 3... I don't think there's any dispute that re-issue claim 3 is an A or B claim. The question is whether the original claims recite an A or B option. Okay, and I apologize, I may have misunderstood your question there. Well, if you just look at the original claim in order to infringe, right? So if you look at the original claim, claim 1, right, would require you to do the pre-bidding, right? Yes, yes, Your Honor. And then if you look at, if you were going to instead decide to charge somebody with violating claim 3, right? Yes, Your Honor. You would have to show both that they did a pre-bidding and that they did not do a pre-bidding. No, Your Honor, that's the proper, the plain language... Tell me, tell me, in order to prove infringement of claim 3. Yes. What would the defendant have had to do? In order for claim 3, it simply identified additional... Wait a second, no, a dependent claim, when it says the method according to claim 1, that means you have to perform claim 1 plus the new limitation. That's how you infringe claim 3, right? Part of the problem is... Answer me, yes or no? Yes, Your Honor. Okay, so in order to infringe claim 3, you would have to show that they performed claim 1, which was the pretrial. Yes, Your Honor. Then you would have to go on and show they did claim 3, which was that they didn't do, that they did a direct. Yes, Your Honor. And then, so that's the way it read. And you went in for reissue because you said, whoopsie-doo, there's an indefinite problem here. You weren't trying to argue when you went for your reissue that you didn't claim broadly enough, right? Yes, Your Honor. Your rationale, the patent officer, we got a little problem here because we've got a little clue. Just like Judge Clevenger might say later on in an infringement case, what kind of a claim is this where you do one thing pretrial and then you turn it around and you do it without pretrial? Well, what kind of sense does that make? And so you said, we better clean this up. Correct, Your Honor. So we go in and say, well, we'll clean it up, we'll fix them. We'll just say they infringed if they did either one. And part of the problem... And that is fairly broader than originally because originally you had to prove all this other stuff. So part of the problem... Why isn't it broader? Part of the problem is that... Why isn't that broader? Part of the problem is Patented Claim 3 also improperly mixes both the method claims and the structure of the Internet web server that enables this process. So one reading of Patented Claim 3 is... Wait, is that New 3? No, Patented Claim 3. Patented Claim 3 reads a method according to Claim 1 wherein the intermediary website enables. Right. So there's a mix of method and structure claims here. And so... Well, that may be a reason why you needed to get a new one, right? Yes, Your Honor. Because there's some confusion of whether it was indefinite or whatever, but that doesn't undermine the question whether or not the new claim is broader than the old claim. So, again, the original claim would only... You would have to... The infringer would have to meet the method of Independent Claim 1... Right. ...which is the trial. Right. Or in the Dependent Claim, the infringer... We could assert only Dependent Claim 3 as a structure, as an independent web server, that enables a non-trial direct transaction. But still, what is that? Now we're just talking about whoever it was that drafted Original Claim 1 with Claim 3 dependent from it wasn't thinking clearly because of these problems, which isn't my problem. It isn't your problem now either. Your problem now is whether or not your fix of that gave your client a broader right to exclude than your client had before. So, as it's redrafted in an independent form, the re-examined claim is now... We could only sue the same parties of Independent Claim 1 with a trial process or the same party for the non-trial process under that dependent claim, what was originally patented Claim 3. So it's been rewritten in independent form. We've taken that patented Claim 3, which requires, as you're pointing out, Your Honor, both the trial process of Claim 1 and the non-trial process of patented Claim 3, and we've rewritten it in independent form to say we now can sue those same two parties, either under Independent Original Patent Claim 1 or Original Patent Claim 3. Counsel, I just want to make sure I'm on the same page in terms of the issue before us. Do you agree the issue is whether the four-year indictment reissue Claim 3 is an improper, broadening reissue? Yes, Your Honor. Yes, Your Honor. Do you have more to add? You're in your rebuttal time. I just want to make sure you know that. No. At this point, I'd like to preserve my time. Okay. Let's hear from the government. Mr. Foreman, thank you. When you're ready. Thank you, and may it please the Court. I'd like to start with this idea of intended scope that Judge Cunningham had asked about. In a typical claim construction analysis, you are looking for the intended scope of the claim, but you're doing that by looking at the claim language, looking at the specification, looking at the prosecution history. What appellants are saying with intended scope is, well, we messed up drafting Claim 3, but we really meant to say the method with A or B. Those two things are completely different. Is there any way to read Claim 3 to be that way? I mean, original dependent Claim 3. Can that be read to mean A or B? No. I don't see how you get that. What is your best argument for why not? Is it based on the plain claim language? Yes. The plain claim language says the original Claim 1 says a method using a trial process, and then the dependent claim says the method of Claim 1. Not using. Using a direct exchange. So I don't see how you get alternatives out of that. It's either you're doing it in Claim 1, and then you're not doing it in Claim 3. But you can't, as appellants have noted, you can't both. So it's Claim 3 that you're both doing it and not doing it? Yes. Even though that seems like an impossibility. Yes, and that's the problem here. And that's why they filed the reissue application, because they realized that there's this inconsistency there. And so their fix, unfortunately, broadens the original claims. And had they done that within the two-year period, statutory period, we wouldn't be here. But that didn't happen. What about the prosecution history that counsel referred to? Some sort of prosecution history that showed that it was their intent to claim it in the alternative. I don't think you can get away from the plain language of the claims. You can't get past the plain language of the claims in this case. Both sides agree that the plain language of Patent Claim 3 does not recite alternatives, and really does not make any sense. So once we're there, you can't... If a claim clearly says A, and the specification clearly says B, then what's the status of the patent? Well, then, I mean, I think you would have potentially a written description issue or an enablement issue if you're claiming something that has nothing to do with what's described in the specification. Do we know anything about the state of the prior art when the claim... the issued claim was filed when Claim 1 and Claim 3 were first put in the patent? Is that of record? No, I mean, other than the one, the beta reference, which is relied on for the obviousness rejection of Reissue Claim 3, that's... And the beta reference taught doing this stuff with a direct exchange? Well, the beta reference has the idea of where you have a database of advertisements that can be posted on the website, and the website selects a specific advertisement based on some criteria, you know. They're listed in the reference. And so implied in that, there's a transaction going on where the people providing the advertisements and the websites hosting the advertisements. So that's really... And the argument was one still in the art would have understood that to have resulted at least in a direct exchange? Correct. And the direct exchange claim still would require a bidding process, so basically an auction-style sale. Why? Beta does not disclose an auction-style sale, but the examiner and the board found that would have been obvious to one of ordinary skill, that a sale can be done via an auction. What I was trying to get at just kind of looked to me like Claim 1 was what the invention was really all about in the beginning, which was to have this pre-processed material. And that was what was innovating. And that Claim 3 just dropped in, oh, well, by the way, let's also take a shot at the primary. I agree. I think that what they were trying to get at with this patent is the idea of doing the pre-bidding trial so that the parties have more information to make a better decision in terms of the offer and acceptance of sale. There's nothing further? Judge Cunningham? Okay. Thank you. All right. Thank you, Counsel. Mr. Gregory, you have a little over three minutes in rebuttal time. Yes, Your Honor. So I'd like to turn to the specification. If we look at Column 11, this is Appendix 34, Column 11 starting at Line 26. And, yes, just to reiterate, I would say that a key part of the invention here is the trial process. Most of the specification is directed to that. And yet here we have a very explicit, as an alternative to trial bidding with a number of interested buyers, a seller can conduct a sale process without trial or bidding with one chosen buyer and conduct a negotiation directly, manually, with the buyer. In Type 9, the seller initiates a direct sale. ClickBroker sets up the direct sale process. The focus of transaction is, again, at ClickBroker and the data type ID, and it goes on to talk more about that direct sale. This is the only support, only written support, for Patented Claim 3 in the specification. It's the only written support for, it's the only interpretation that is supported by the specification, that these direct sales are performed as an alternative to a direct, as an alternative to the trial process. And so the only proper claim construction of Patented Claim 3 is that this direct sale without a trial process that's recited is an alternative to Independent Claim 1. But doesn't our case law say that we're supposed to look at what the language of the claim says, and we can refer to the specification to change that ordinary meaning of those words only if someone's a lexicographer or there's a disclaimer. I mean, this is just disclosing an embodiment. What do you think your best argument is? You know, in terms of we don't usually use the specification to fix the plain claim language. Understood. And yet in this particular case, while the claim language is fairly clear, there is clear ambiguity because of that mix between a method and a structure that is introduced by that website-enabling language. And so in order to resolve that ambiguity, we need to look back to the specification to understand what that clear lexicography is, what the clear intent is for that claim language. You're not saying that there's lexicography here, though, right? I use lexicography because that was Judge Stoll's question. I don't know that there is lexicography, per se. We're not trying to redefine a meaning. But the original patent drafter introduced ambiguity, and it's that ambiguity that allows us to look back to the specification to understand where the clarity is. So your right to exclude for 20 years should be based on an ambiguity. That doesn't make much sense, does it? So, again, that's the problem, though, because... That problem didn't get created by the patent law. No, the problem got... It was not created, by the way. Somebody drafted Claim 3. Absolutely, and that's the whole intent of free examination is to correct those drafting errors that were introduced initially in order to resolve that ambiguity. Any questions? Any questions, Judge Cunningham? Okay, thank you very much. Thank you, Your Honor. We thank counsel for their argument. The case is submitted.